**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**KACY DEAN OVERSTREET,**

    **Plaintiff,**

vs.                                                                                                     Case No.: 8:13-cv-223-T-27EAJ

**CAROLYN W. COLVIN**
**Commissioner of Social**
**Security Administration,**[1]

    **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to the Social Security Act ("the Act"), as amended, Title 42, United States Code, Sections 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

After reviewing the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the administrative record, and the pleadings and memoranda submitted by the parties in this case, the Court recommends affirming the Commissioner's decision and dismissing this case.[2]

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with

---

[1] The current acting Commissioner of Social Security, Carolyn W. Colvin, is substituted for Michael J. Astrue, former Commissioner of Social Security.  See Fed. R. Civ. P. 25(d).

[2] The district judge referred this matter to the undersigned for consideration and a Report and Recommendation.  See Local Rule 6.01(a), M.D. Fla.

applicable legal standards. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the Commissioner's findings, the reviewing court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

## I. Background

On May 18, 2009, Plaintiff protectively filed applications for DIB and SSI, alleging disability beginning April 28, 2009 in both applications. (T 15) Plaintiff's applications were denied initially and upon reconsideration, and an administrative hearing was held on February 7, 2011. (T 15, 41) Thirty-six years old at the time of the hearing, Plaintiff has an Associate Degree and past relevant work as a framer, assistant manager, retail sales person, and process server. (T 23, 24, 49, 50)

On April 1, 2011, the ALJ denied Plaintiff's claims. (T 15) Plaintiff's severe impairments included: pancreatitis with stent placement/removal, lumbosacral spondylosis/muscular low back pain, right adnexal mass/uterine fibroid (leiomyoma) – now status post right salpingo-oophorectomy, and mental impairments variously diagnosed as bipolar I disorder, bipolar disorder without

psychosis, bipolar disorder NOS, bipolar II disorder, cannabinoid abuse, anxiety, alcohol disorder, adjustment disorder with anxiety and depressed mood, and anxiety disorder.[3] However, the ALJ determined that these impairments did not meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, App. 1. (T 17, 21) The ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform a reduced range of medium work subject to the following limitations: Plaintiff must avoid concentrated exposure to hazards and is limited to performing simple one-to-four step, routine, repetitive tasks in a work environment where there would be only occasional contact with coworkers and supervisors and no contact with the general public. (T 23) While finding Plaintiff unable to perform any past relevant work, the ALJ concluded that Plaintiff was capable of performing other jobs available in significant numbers in the national economy, such as a hand packager, salvage laborer, or agricultural produce packager. (T 25-26) Accordingly, the ALJ concluded that Plaintiff was not disabled during the relevant period. (T 26) On January 7, 2013, the Appeals Council denied review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (T 1-6)

The medical and other evidence has been reviewed in the ALJ's decision and will not be repeated here except as necessary to address the issues presented.

## II. Analysis

Plaintiff argues that the ALJ erred by (1) failing to appropriately evaluate Plaintiff's credibility; (2) incorrectly determining Plaintiff's residual functional capacity; and (3) failing to pose a hypothetical to the vocational expert ("VE") that properly included Plaintiff's mental health limitations.

---

[3] The ALJ determined that irritable bowel syndrome, scoliosis, and cervical spondylosis imposed no significant vocational limitations. (T 21).

**A.** Plaintiff claims the ALJ inappropriately evaluated Plaintiff's credibility and improperly discredited Plaintiff's complaints of pain and other subjective symptoms.

Subjective complaints are evaluated according to a three-part "pain standard" used to evaluate a claimant's testimony about pain or other subjective symptoms. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam). A plaintiff must show: (1) objective medical evidence of an underlying medical condition; and either (2) the objective medical evidence substantiates the severity of the pain from the condition, or (3) the objectively determined medical condition is of sufficient severity that it would reasonably expected to produce the pain alleged. Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986) (per curiam). If the ALJ does not credit a claimant's testimony regarding subjective complaints, the ALJ must "articulate explicit and adequate reasons for doing so." Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (per curiam). A clearly articulated credibility finding that is substantially supported by the record will not be overturned. Id. at 1562 (citation omitted).

The ability to engage in everyday activities of short duration such as housework or fishing does not disqualify a claimant from receiving disability benefits. Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir. 1997). However, the Commissioner may properly rely on a claimant's daily activities, among other evidence, in determining whether a claimant is entitled to disability benefits. Hoffman v. Astrue, 259 F. App'x 213, 219 (11th Cir. 2007) (per curiam) (unpublished) (citations omitted).

To satisfy the first of the pain standard elements, Plaintiff is required to show objective medical evidence of an underlying medical condition. Landry, 782 F.2d at 1553. In making his credibility determination, the ALJ applied the correct legal standard and found that Plaintiff suffered from a number of severe physical and mental impairments, as stated previously. (T 17) However,

the ALJ determined that, while Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, Plaintiff's statements about the persistence, intensity, and limiting effects of the alleged symptoms were credible only to the extent that she is limited to the type of medium work described in the residual functional capacity assessment. (T 23-24)

Plaintiff asserts that the ALJ did not consider the intensity, persistence, or limiting effects of Plaintiff's pain and symptoms. Regarding her mental health issues, Plaintiff testified that she was Baker-acted twice as suicidal, that she loses sleep, and that she alternates between ten days to two weeks each month in a depressed state followed by a period of time spent in a manic state, and has only a few days a month of clarity. (T 46-49) She also stated that her depressive episodes cause her to fall asleep at work (ultimately causing her to be fired from her last two jobs), she has been cutting herself since age eighteen, and that she suffers from hallucinations, nightmares, and panic attacks. (T 49-54) While medication helps to manage Plaintiff's symptoms, the medications do not entirely treat her mental health problems. (T 53) For example, the medications do not help her sleep during manic episodes. (T 54) Plaintiff also suffers from strained relationships with her family and friends as a result of her mental health issues. (T 58)

As for physical problems, Plaintiff explained that, due to scoliosis, her back hurts every day; about twice a month it freezes up for four or five days, causing reduction in her ability to turn her head and numbness in her fingertips. (T 55-56) As a result of irritable bowel syndrome and ulcers, Plaintiff testified that she has diarrhea every day (resulting in trips to the restroom three to four times a day for ten to twenty minutes each), occasional vomiting, and abdominal pain rated at seven on a scale of one to ten on a bad day. (T 56-57) Plaintiff also suffers from kidney stones and passes a

stone at least every six months. (T 57)  This process takes about a week and causes vomiting and severe pain. (T 57-58)

Despite this testimony, the ALJ found Plaintiff capable of a reduced range of medium work in a work environment, subject to the limitations stated previously. [4] (T 23)  The ALJ considered Plaintiff's testimony regarding her back pain to be exaggerated, explaining that Plaintiff's x-rays show only mild scoliosis and that Plaintiff reported to mental health personnel that she exercised consistently, walking two to four miles per day and participated in other activities such as doing household chores, and visiting and talking to neighbors. (T 24)  Also, a consultation with a pain-management specialist - Erick Grana, M.D.- revealed that scoliosis does not normally produce back pain and suggested that Plaintiff could be engaging in "drug seeking behavior" because she reported taking Percocet for that condition. (T 19-20; 414-17 )[5]  The ALJ also indicated that Plaintiff's medical records do not show ongoing treatment for irritable bowel syndrome and that Plaintiff reported that she had not taken any medication for irritable bowel syndrome in the ten months prior to July 2009. (T 24)  Finally, the ALJ found that Plaintiff's mental health symptoms were controlled with medication and gave great weight to the opinions of the more recent state agency evaluations..

---

[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c).

[5] Dr. Grana's examination showed some decreased range of motion in the cervical and lumbar spine although x-rays indicated only a mild scoliosis of the thoracic spine of about five degrees on the right side. Despite his findings, Dr. Grana did diagnose chronic pain syndrome and prescribed Flexeril for muscle spasm and Celebrex for pain with a recommendation that she be followed by her primary care physician  (T 416-417).

(Id.)[6] The ALJ explained that even though updated mental health records and clinical evidence were received after the State agency psychological consultants rendered their opinions, the updated information was similar to the evidence previously considered by the state agency psychological consultants. (Id.) And the ALJ also noted, Plaintiff's mental health problems have been "relatively well controlled with medications" and her reports of very limiting daily activities are belied by the activities she reported to mental health personnel, including daily exercise and other activities of a social nature. (T 24)  Further, no treating physicians had any opinions about Plaintiff's ability to engage in work. ( Id.)

Plaintiff does not challenge the evidence relied on by the ALJ  except to assert, in a conclusory fashion, that her testimony is supported by "the numerous Baker Act admissions" and "low Global Assessment of Functioning (GAF) scores." (Dkt. 16 at 5)  However, the ALJ's written opinion includes a detailed summary of the medical records and Plaintiff's testimony, including her two Baker Act admissions.  The ALJ noted that on both of those occasions Plaintiff was released without referral for inpatient psychiatric treatment. (T 20, 22)  Although the ALJ did not cite to any GAF scores, Plaintiff has likewise failed to cite to any scores in the record or explain their significance in terms of the ALJ's credibility assessment.[7]

---

[6] The ALJ distinguished between earlier opinions provided by the psychological consultants, which were accorded limited weight (Exhibits 11F and 12 F, T 371-388)  and later assessments (Exhibits 20F and 21F, T 507-524) which the ALJ found more persuasive. (T 24). Essentially, the ALJ credited an evaluation (Exhibit 20F) by Mike Dow, Ph.D. indicated that Plaintiff had mostly no significant limitations and few moderate limitations and could understand instructions and recall work procedures, adapt, attend, concentrate, and persist and get along with others. (T 507-09). A Psychiatric Review Technique Form (Exhibit 21F),  also prepared by Dr. Dow, contained a detailed review of the mental health records, among other assessments.  (T 510-24).

[7] In any event, The GAF scale describes an individual's overall psychological, social, and occupational functioning as a result of mental illness, without considering any impaired functioning

In reviewing a decision denying disability benefits, the Court cannot reweigh the evidence as long as substantial evidence supports the ALJ's conclusions, as in this case. The ALJ clearly articulated reasons for not fully crediting Plaintiff's allegations, and substantial evidence supports the ALJ's credibility determination; this issue does not entitle Plaintiff to relief. See Allen v. Sullivan, 880 F.2d 1200, 1202-03 (11th Cir. 1989) (per curiam).

**B.** Plaintiff claims that the ALJ erred in determining Plaintiff's RFC by failing to consider all of Plaintiff's mental and physical impairments.

The RFC describes the most a claimant can do in a work setting despite limitations resulting from the claimant's impairments. Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). It is based on consideration of the relevant medical and other evidence in the record. Id. "The task of determining a claimant's ability to work is within the province of the ALJ, not a doctor." Cooper v. Astrue, 373 F. App'x 961, 962 (11th Cir. 2010) (per curium) (unpublished).

As explained previously, the ALJ considered Plaintiff's medical and mental health history, as well as her hearing testimony and assessments by state agency psychological consultants. The record does not include an opinion from any treating physician regarding any work-related limitations Plaintiff may have. (T 24) In the absence of any report from a treating physician, the ALJ could properly rely on the opinion of a consulting non-examining physician. See Flowers v. Comm'r of Soc. Sec., 441 F. App'x 735, 742-43 (11th Cir. 2011) (per curiam) (unpublished) (the ALJ properly

---

due to physical or environmental limitations. Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") at 32 (4th ed. text rev. 2000). A GAF score represents a subjective determination (based on a scale of 100 to 1) of a patient's overall level of functioning. Id. In the context of Social Security benefits determinations, the Commissioner has indicated that GAF scores have no "direct correlation to the severity requirements of the mental disorders listings." Wind v. Barnhart, 133 Fed. App'x 684, 692 n.5 (11th Cir. 2005) (per curiam) (unpublished) (citation and internal quotation marks omitted).

8

discounted treating physician opinions and relied on consulting non-examining physician's opinion that was consistent with the medical record) .[8]  Substantial evidence supports the ALJ's RFC determination, and this issue does not entitle Plaintiff to relief.

**C.**     Plaintiff also contends that the ALJ did not pose a complete hypothetical question to the VE because the question "omitted a significant portion of the evidence of the Claimant's mental impairments and resulting limitations." (Dkt. 16 at 6).  However, other than citing to four cases. Plaintiff does not develop his argument on this issue.  For example, he does not identify which functional mental limitations Plaintiff has which were not included in the hypothetical question and why the absence of any such limitations is grounds for remand.

In order for the VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question to the VE that includes all of a claimant's impairments. Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999) (citation omitted).  However, the ALJ is required to include only limitations that the ALJ finds supported by evidence. See Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1161 (11th Cir. 2004).  The "mere existence of [an] impairment[] does not reveal the extent" to which it limits a claimant's ability to work. Moore v. Barnhart, 405 F.3d 1208, 1213 n. 6 (11th Cir. 2005) (per curiam) (citation omitted).

The hypothetical posed to the VE included Plaintiff's age, education, and past work experience. (T 65) It also included Plaintiff's physical capacity to lift 50 pounds occasionally and 25 pounds consistently, and to stand, walk, and sit each for up to 6 hours in an eight hour day. (T 65-66) Plaintiff was to avoid concentrated exposure to hazards and was limited to work requiring only

---

[8] While not binding precedent, unpublished opinions of the Eleventh Circuit Court of Appeals may be cited as persuasive authority.  11th Cir. R. 36-2.

"simple one-to-four step routine repetitive tasks in a work environment where there would only be occasional contact with coworkers and supervisors, and no contact with the general public." (T 66-67) Based on this hypothetical question, the VE concluded Plaintiff would not be able to perform any of her past relevant work, but that she could perform other types of work, such as hand packager, salvage laborer, or agricultural product packer. (T 66) The VE also identified jobs in the light work category which Plaintiff could perform. (T 67) Plaintiff's counsel also asked the VE several questions about the effect of other limitations on such a person's ability to work. (T 67-68)

The ALJ's hypothetical question was complete and properly included all of Plaintiff's mental health limitations as reflected in Plaintiff's RFC which is supported by substantial evidence. This issue does not entitle Plaintiff to relief.

### III. Conclusion

For the foregoing reasons, the ALJ's decision is supported by substantial evidence and the proper legal principles. Accordingly and upon consideration, it is **RECOMMENDED** that:

(1)  the decision of the Commissioner be **AFFIRMED** and the case **DISMISSED**, with each party to bear its own costs and expenses; and

(2)  the Clerk of Court enter final judgment in favor of Defendant consistent with 42 U.S.C. §§ 405(g) and 1383(c)(3).

**Date: January 31, 2014**

ELIZABETH A JENKINS
United States Magistrate Judge

## **NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal.  See 28 U.S.C. § 636(b)(1).

Copies to:

Counsel of Record

District Judge